### TOM SUMERALL v. THE STATE.

No. 21010. Delivered May 22, 1940.
Rehearing Denied June 26, 1940.

610

The opinion states the case.

*Lester Settegast,* of Houston, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

GRAVES, Judge.

Appellant was charged by information and complaint that he, an adult male, made an aggravated assault upon Augusta Sumerall, a female, on or about October 21, 1939, the complaint being filed on October 23, 1939, this trial being had before a jury on November 2, 1939, and resulted in a conviction and a fine of $500.00.

It appears from the record that the complaining witness was the divorced wife of appellant, who had married another wife a short time after the divorce from prosecutrix. The Ladies Auxiliary of the Plumbers' Union of Houston gave a party and ball, and the prosecuting witness,—who had been a former member of this auxiliary, but after her divorce had lost her membership,—was present as the guest of one Mrs. Lockwood.

The State's case shows that prosecutrix was drinking to some extent, and while seated at one of the tables in the room

where the party was held appellant and his new wife sat down at a table close to the one at which prosecutrix was seated, and eventually she turned around and offered appellant's wife a drink, and then offered appellant a drink. Appellant said nothing, and prosecutrix turned her back on appellant. Soon thereafter prosecutrix said appellant poured a bottle of beer down her back, and she raised up and asked him why he was doing that; that appellant grabbed her left arm and twisted it and pulled her around towards him, and she threw a glass containing whisky on appellant's shirt, and threw the whisky bottle at him. Appellant then struck her in the face with a beer bottle and broke the cheek bone in three places, causing a paralysis of the nerves in that side of the face. Prosecutrix then started down the table and threw some glasses at appellant, who then threw a bottle at her, striking her in the side and breaking her rib.

Mrs. L. C. Lockwood, prosecutrix's companion, corroborated Augusta Sumerall as to the appellant starting the difficulty by pouring the beer down prosecutrix's back, and the whisky throwing by appellant, the stroke on the face by appellant with a beer bottle, the throwing of glasses by prosecutrix, and the striking of her in the side by a thrown beer bottle, and the further fact of appellant possessing himself of a chair, and the end of the melee. This all occurred about midnight of October 21, 1939.

A doctor testified that he waited on prosecutrix on Sunday, October 22, 1939, and that he found her right cheek bone fractured in three places, her eye swollen shut with a decided discoloration, and the tenth rib on the left side fractured, and the right side of the face partially paralyzed, rendering it difficult for her to speak.

Appellant testified at the trial in his own behalf, and we set forth his entire testimony herein:

"My name is Tom Sumrall. I am a plumbing contractor here in Houston, Harris County, Texas, and have been for some years. On the night of October 21, 1939, my wife and I were at the Elks Club to attend a dance given by the Ladies' Auxiliary. Upon arriving there I walked around over the hall for sometime, greeting my friends. There were some 150 or 200 people there, practically all of whom I knew. When I came back to the table where we had been originally seated I saw my former wife seated next to where we sat. Her back was turned to me and she sometime thereafter turned back to the

table at which I was seated and offered me a drink. I said nothing. I did not refuse the drink or accept it, I just didn't say anything, at which time the complainant threw the glass containing some liquid, I don't know what, on the front of my shirt. She was standing over me and then threw a bottle containing whisky, that struck me on the head. She then continued on down the other or north side of our table throwing anything she could get her hands on at me, and in self-defense I threw a water glass at her to try to make her stop. It struck her in the left side. I had not had any previous trouble with Mrs. Sumrall and I know of no reason for her to throw the drink on me unless she had been drinking too much. I do not know where she received her injuries. I did throw a water glass at her and she stopped it.

"CROSS EXAMINATION: I am not attempting to tell the jury that I did not strike her. It may be possible that I did, because I had a bottle of beer in my left hand, like this, and when I straightened up and threw my arm out to defend myself, I could have struck her. I do not recall doing it. I did throw a glass at her, but that was after she had thrown the bottle and the other things at me. The bottle she threw hit me in the middle of the forehead but did not break the skin or leave any mark. When she was throwing these things at me I attempted to pick up a chair in front of me, but this was prevented by the crowd, and my former wife thereafter quit throwing things at me. Nothing else happened that I know of."

Appellant also introduced a witness, Mrs. Ward Nepper, who corroborated appellant in some minor details. He also introduced his present wife whose testimony is here set out in full: "My name is Mrs. Tom Sumrall; I am the wife of the defendant. We were married in August 1939, a short time after Mr. Sumrall was divorced from Mrs. Augusta Sumrall. I was at the Elks Club the night of October 21, 1939, with the defendant. I was seated next to him on his left. I saw the former Mrs. Sumrall offer him a drink which he refused, after which time she threw the drink on the front of his shirt. I got up at that point and walked away, and when I looked back a crowd was gathering around Tom Sumrall. I did not see him strike her, and I did not see him pour any beer down her back. I am not attempting to say he did not strike her. I merely say I did not see it."

It seems that upon the calling of this case appellant made no motion for a continuance, but did say that he was not

ready; that he desired the presence of Mrs. Ward Nepper; that the court ordered a subpoena returnable instanter for Mrs. Nepper, and the appellant then announced ready for trial, and a jury was selected, and the case proceeded to trial with appellant being represented by an attorney of his own choice. He asked for no further time, nor for further subpoenas for witnesses.

Upon his conviction he filed an amended motion for a new trial in which he alleged that upon being arrested and giving bond, one Howard, a mutual friend of himself and his first wife, told him that upon the payment of $25.00 to his ex-wife, the amount of the doctor's bill, she would drop these proceedings in court against him. That he agreed to do so, and thought the case was settled. That his present wife became seriously ill about this time, and he dismissed this case from his mind. That on the day prior to this trial he ascertained that the doctor's bill, etc., would amount to about $150.00, and that unless paid prosecutrix would insist upon a trial of the case. That he thereupon began a diligent search for witnesses, and to employ a lawyer for his defense. That he was forced to go to trial on the next day with only two witnesses beside himself, and one of these witnesses, Mrs. Nepper, was easily confused and her testimony discredited before the jury. He brings the testimony of newly discovered witnesses before the court in the form of affidavits relative to what their testimony would be.

The State controverted this motion by alleging that appellant was arrested on the 28th day of October, 1939, on a capias issued on October 25, 1939, and immediately gave bond, and the case was set for trial on November 2, 1939, and defendant appeared on that date, and his attorney of record announced ready when the cause was called. There was no motion for continuance filed, but a subpoena was issued for Mrs. Nepper on that day and she appeared and testified. Appellant offered no testimony relative to his alleged agreement with Mr. Howard. This answer also traversed many other allegations contained in such motion for a new trial.

The affidavit presented of R. C. Malitz, Jr., states that he had heard the prosecutrix say that she would get even with appellant if it was the last thing she ever did. That prosecutrix had some drinks, and that he saw her after the difficulty and he saw no bruises on or about her face, and did not hear her make any exclamations nor gestures of pain.

V. J. Walker would testify to practically the same as that above quoted, with the exception that he made no mention of threats. His wife, Grace Walker, merely signs the affidavit of her husband saying that these facts are true.

The affidavit of Harry Brown says that he did not see appellant pour any beer down prosecutrix's back. That the affair started with prosecutrix throwing whisky on appellant, and the only thing he saw appellant do was after prosecutrix threw things at appellant, he threw a bottle at prosecutrix; that he saw no injuries to her face, and never saw appellant strike prosecutrix in the face with his hands nor any other object. Mrs. Virginia Brown states practically the same thing as Harry Brown.

Walter Hill and his wife state in their joint affidavit that they were seated at the same table with appellant and his present wife, and offered no further pertinent testimony.

Appellant was bound to have known that all these witnesses whose affidavits he presents were present at the scene of the difficulty, and were seated at the table with him or immediately adjacent thereto, and yet he did absolutely nothing, according to this testimony, to obtain their attendance at this trial. He had nine days after the filing of the complaint and five days after his arrest to attempt to locate these very witnesses whose testimony he alleges to be newly discovered. He could not rely upon what he claims was the supposed agreement with prosecutrix, which he did not mention at his trial; nor does he offer the affidavit of Mr. Howard relative thereto; nor did his attorney mention the same to prosecutrix while she was on the stand. The fact remains that he was negligent in preparing his defense herein, and after having voluntarily gone to trial without summoning the persons in his company at the time of the difficulty, and after having received a more onerous punishment than anticipated he asked the trial court to give him a new trial in order that he might take this matter more seriously by evidencing some diligence in procuring witnesses to substantiate his theory of the case.

The trial court in his ruling on the motion for a new trial certifies that none of the matters contained therein were called to his attention; that the major portion of such proffered testimony was negative only; that appellant announced ready for trial, and made no request for a continuance.

We think appellant was entirely without diligence in failing

to interview the very persons sitting with him at or near the same table at the time of the difficulty.

That the penalty may be heavy seems to be patent, but the legislature has seen fit to fix the limits much higher for an aggravated assault punishment; it is an aggravated assault for an adult male to strike a female, and this penalty is within the limits set forth in the law.

We see no error evidenced herein, and the judgment is affirmed.

### ON MOTION FOR REHEARING.

KRUEGER, Judge.

Appellant, in his motion for a rehearing, contends that we erred in several respects in our original opinion. His main contention seems to be that the trial court erred in declining to grant him a new trial upon alleged newly discovered evidence. We are not in accord with his contention. The record shows that the alleged offense was committed on the night of October 21, 1939. A complaint was filed against him on the 23rd of said month. He was arrested on the 28th, when he gave bond for his appearance in court at which time his case was set for trial for November 2nd. He made no effort to obtain process for any witnesses and to secure their attendance although there were approximately 150 to 200 people present when the alleged offense was committed, all or nearly all of whom he knew, but so far as this record shows, he did not interview a single person of those who were present.

On the morning of his trial he made a verbal request for a continuance by reason of the absence of Mrs. Nepper. The court had process issued for Mrs. Nepper who, in response to a summons, appeared and testified for appellant. He claims some agreement with the injured party that she would not prosecute the case if he would pay the doctor's bills, etc. After the complaint was filed, the prosecutrix could not legally enter into an agreement to stop the prosecution for an offense denounced by our statutes. The evidence, in our opinion, is sufficient to sustain the conviction. Although the punishment may be somewhat severe, yet it is within the limit prescribed by law for such an offense, and we would not, under the facts, be justified in holding it to be excessive.

The motion is overruled.

. The foregoing opinion by the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.